Judge: Honorable Karen A. Overstreet
Chapter 13
Date of Plan Confirmation Hearing: May 13, 2015
Time of Hearing: 9:00 AM
Court Room: Marysville Municipal Court
Location: 1015 State Ave., Courtroom 1
Marysville, WA 98270

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re:

RANDY HORTON AND SHALYNN HORTON,

Debtors.

Bankruptcy Case No. 15-11157 KAO
Chapter 13 proceeding

**OBJECTION TO CHAPTER 13 PLAN**

COMES NOW the Center for Women's Health at Evergreen (the "Center") and objects to confirmation of the proposed Chapter 13 plan for the following reasons.

**A. BASIS OF CLAIM**

In their amended, proposed Chapter 13 Plan, the Hortons acknowledge owing a nondischargeable debt to the Center for Women's Health at Evergreen. (See Dkt 21, p. 5 & 10.) However, the Hortons fail to mention, and fail to disclose in the bankruptcy schedules, that that debt is based upon serious, criminal conduct that resulted in Shalynn Horton's imprisonment and the entry of a restitution order for $91,905.13 in King County Superior Court on November 15, 2007. (*See* Declaration of William A. Kinsel In Support of the Center's Objection, at Exhibit A.) That underlying criminal restitution order is also nondischargeable under §1328(a)(3).

OBJECTION TO CHAPTER 13 PLAN - 1
Cause No: 15-11157-KAO

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 1 of 9

That criminal conduct, in turn, gave rise to the nondischargeable judgment entered by the Honorable Thomas T. Glover on August 23, 2007, for the amount of $214,900.05 in Adversary Cause No. 07-01160-TTG. (*See* Kinsel Dec., Exhibit B.) That judgment goes into detail regarding the large number of criminal acts giving rise to the nondischargeable debt under 11 U.S.C. §523(a)(2), (4) and (6). Only nominal payments have been made against that judgment, with no resulting reduction in principal. The Center has also put in an order for a copy of the payment history on Mrs. Horton's criminal restitution obligation. Based on the oral representations of the superior court, the Center presently understands that the current balance owing on that debt is $159,316.70, as the Hortons have paid only $17,058.82. (Dec. of Lori J. Peters in Support of the Center's Objection to Confirmation, ¶¶2-4, Ex. A.)

**B.      THE PROPOSED PLAN FAILS TO COMPLY WITH §1322(A) OR (B)**

Section 1322(a)(3) requires a Chapter 13 Plan to provide the same treatment for each claim within a particular class, if the plan classifies the claims, while §1322(b)(1) allows a debtor to designate a class or classes of unsecured claims, but without discriminating unfairly against any class so designated. The instant proposed plan complies with neither of these approaches in a number of instances. For example, it unfairly favors WFS Financial/Wachovia Dealer Srvs by paying over the life of the plan $23,514.60 on a $20,296 debt, of which $5,296 is unsecured. (*Compare* Dkt 14, p. 9 of 35 to Dkt 21, p. 3 of 10.) Likewise, it unfairly favors Chase Auto by paying $5,793 over the life of the plan on a $5,108 debt, of which $108 is unsecured. Finally, it provides for the payment in full, plus interest, of a completely unsecured claim owed to the Snohomish Cascade Highlands EMB management. (*Compare* Dkt 14, p. 8 of 35 to Dkt 21, p. 2 of 10.)

While those creditors (excepting Snohomish Cascade) may have some portion of their claims secured, as to the unsecured portions of their claims, they are no different than any other unsecured creditor. Yet, all other unsecured creditors receive no payments under the

OBJECTION TO CHAPTER 13 PLAN **- 2**
Cause No: 15-11157-KAO

**LAW OFFICES OF
WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 2 of 9

plan. Because those three unsecured creditors are treated differently, the proposed plan does not comply with §1322.

C.  **THE PROPOSED PLAN FAILS TO COMPLY WITH §1325(A)(4)**

Section 1325(a)(4) requires a Chapter 13 Plan to establish that it is no worse than a Chapter 7 liquidation. Specifically, 1325(a)(4) requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of *each allowed claim* is not less than the amount that would be paid *on such claim* if the estate of the debtor were liquidated under chapter 7 . . . ." (Emphasis added.) Under the proposed plan, the debtors acknowledge that the Center's claim should be allowed, and that it is nondischargeable. (Dkt. 14, p. 13; Dkt 21, p. 5. Yet, the Hortons propose to pay the Center *nothing for the five years* of the plan.

By comparison, if the debtors' estate is liquidated under Chapter 7, then the Center will be entitled to proceed with wage garnishments against both Mr. Horton and Mrs. Horton and receive the amount specified under Washington's wage garnishment laws. That, unequivocally, is substantially superior to the proposed plan. Confirmation should accordingly be denied.

D.  **THE PLAN IS NOT PROPOSED IN GOOD FAITH AND THUS FAILS TO COMPLY WITH §1307(C)**

Given the totality of the circumstances, the Center submits that the Hortons have manipulated the bankruptcy code to avoid making any payments over the life of the 5-year Plan on a nondischargeable debt springing from extensive criminal conduct. As applied to the Center's claim at least, then, the plan is presented in bad faith, justifying denial of confirmation of that plan in its present form, and perhaps conversion to Chapter 7. 11 USC §1325(a)(3) & (7).

OBJECTION TO CHAPTER 13 PLAN **- 3**
Cause No: 15-11157-KAO

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 3 of 9

The approved method of assessing a "bad faith" claim raised in objection to a Chapter 13 plan is discussed in some length at In re Lepe, 470 B.R. 851, 855-856 (US Bankruptcy Appellate Panel, 9th Cir, 2012):

> The decisional law in the Ninth Circuit guiding a bankruptcy court's examination of a chapter 13 debtor's good faith under the Code is well-known. *Goeb v. Heid (In re Goeb),* 675 F.2d 1386 (9th Cir.1982), was one of the first decisions to construe the § 1325(a)(3) good faith requirement, and its holding has continuing vitality.
>
> *Goeb* noted that neither the former Bankruptcy Act, nor the then-new Bankruptcy Code, defined good faith, and that there was no controlling case law assigning meaning to the term. In light of the equitable nature of bankruptcy court proceedings, when weighing a debtor's good faith in a chapter 13 case, *Goeb* held that a bankruptcy court should ask whether the debtor had acted equitably in proposing the plan. *Id.* at 1390. More precisely, according to the court, a bankruptcy court should inquire "whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." *Id.* To make its decision about a debtor's good faith (or lack of it), *Goeb* emphasized that a bankruptcy court must engage in a "case-by-case" analysis of the "particular features of each Chapter 13 Plan," and should consider "*all* militating factors." *Id.* To do justice to the purposes of the Code, the court stated:
>
>> We emphasize that the scope of the good-faith inquiry should be quite broad. The statement most quoted on the meaning of "good faith" is: ["]Good faith itself is not defined but generally the inquiry is directed to whether or not there has been an abuse of the provisions, purpose, or spirit of Chapter XIII in the proposal or plan.["] 10 W. Collier, Bankruptcy ¶ 29.06[6] (14th ed. 1980). However, even this generalization does not adequately reflect the range of relevant considerations.... Too much weight should not be given to Collier's observation.... [B]ankruptcy courts cannot substitute a glance at [one factor such as the amount to be paid under the plan] for a review of the totality of the circumstances.
>
> *In re Goeb,* 675 F.2d at 1390 n. 9; *see also Chinichian v. Campolongo (In re Chinichian),* 784 F.2d 1440, 1444 (9th Cir.1986) (stating that the good faith inquiry "should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13").

Id., 470 B.R. at 855-856

The In re Lepe Court then goes on to discuss a wide variety of factors that a bankruptcy court *might consider*, at 470 B.R. 857-858, but sums up all of those guidelines as

OBJECTION TO CHAPTER 13 PLAN **- 4**
Cause No: 15-11157-KAO

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 4 of 9

the application of the "'totality of the circumstances' chapter 13 good faith analysis". Id., p. 857. In the case at bar, there are a number of important factors that add together to result in the conclusion that the debtors have not met their burden of proving that their plan was proposed in good faith. But those considerations can be summarized fairly simply: The Hortons have assiduously avoided making any significant payments against either their nondischargeable judgment for $214,900.05, or on the criminal restitution order for $91,905.13. Instead, the Hortons devoted their available resources to acquiring real and personal property (a home, two cars, appliances) that are largely subject to secured liens and that can now be used as a convenient excuse for proposing a Chapter 13 plan that would award the Hortons' refusal to pay their nondischargeable debts by allowing them to continue to avoid making any payments whatsoever to the Center for the next five years. Meanwhile, the Hortons will continue with the acquisition of personal assets without making any recompense whatsoever to the Center for Womens' Health. This, under the totality of the circumstances, amounts to the absence of good faith on the part of the debtors.

**1.     The Debtors Engaged in Egregious Behavior that Was Not Fully Disclosed**

The court in In re Lepe cites to four "amplified criteria" that can be used in the application of the "totality of circumstances" chapter 13 good faith analysis. 470 B.R. at 857-858, *citing* Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999). Two of those four amplified criteria can be combined here, i.e., the debtors have engaged in egregious behavior and failed to fully disclose the same in the petition.

To begin, the debtors failed to disclose the egregious, "bad conduct" of Shalynn Horton that, in 2007, resulted in her being sentenced to a 1 year, 10 month term of imprisonment for felony theft. That conviction also resulted in the entry of a $91,905.13

OBJECTION TO CHAPTER 13 PLAN - 5
Cause No: 15-11157-KAO

LAW OFFICES OF
WILLIAM A. KINSEL, PLLC
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 5 of 9

criminal restitution order, which is not disclosed in the debtors' bankruptcy petition.[1] (Kinsel Dec., Ex. A, p. 3.) That debt is nondischargeable under §1328(a). As determined in the nondischargeable judgment for $214,900.05 entered against Shalynn R. Horton, individually, against Randy R. Horton, individually, and against the marital community of Shalynn and Randy Horton, that liability arose from a course of conduct that constituted a pattern of criminal profiteering activity under RCW 9A.82.010(12) involving both Shalynn Horton and her co-conspirator, Randy Horton, in the theft of <u>forty-three</u> checks from Ms. Horton's employer—the Center. Twenty-nine of those checks amounted to theft in the first degree, with each of the forty-three checks being completed with forged endorsements. (Kinsel Dec., Ex. B, p. 2.) This, under any measure, constitutes egregious conduct.

The Hortons have, however, compounded their egregious conduct by effectively paying as little as possible against the obligations they incurred due to this criminal activity. Specifically, since 2007 the Hortons have paid only $17,058.82 against the $91,905.13 restitution order, which because of interest has grown to a balance of $159,316.70. (Declaration of Lori J. Peters, ¶4.) Similarly, through minimal separate payments made to the Center through the Center's counsel, the Hortons have paid since 2007 only $7,840 against the $214,900.05 judgment, which like the restitution order has grown in size due to post-judgment interest. (<u>Id.</u>, ¶¶2-3, Ex. A.) Simply put, the Hortons have successfully evaded making any meaningful payments against their nondischargeable criminal or civil liabilities. Instead, they have used their resources to acquire other assets for themselves that they now claim should receive priority under their plan, to the complete exclusion of the Center. This, as a matter of fundamental equity, is wrong. The Hortons should not be allowed to pass

---

[1] The debtors may assert that it did not need to be disclosed because the liability of the restitution order overlaps that of the nondischargeable judgment entered against them. However, given the nature of the criminal conduct, and the separate, nondischargeable nature of that criminal restitution order, it should have been disclosed and then explained by reference to that nondischargeable judgment.

OBJECTION TO CHAPTER 13 PLAN **- 6**
Cause No: 15-11157-KAO

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 6 of 9

through life effectively unscathed by the egregious, criminal conduct that caused substantial damage to the Center for Women's Health.

### 2. The Debtors Seek to Defeat Other Litigation

Another factor identified by the 9th Circuit is whether "the debtor only intended to defeat state court litigation. In re Lepe, 470 B.R. at 857-858, *citing* Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999). Every Chapter 13 is to be assessed on its own merits, and here the focus is on whether the Hortons seek to defeat *other* litigation, rather than just "state litigation." The Center submits that the evidence does show that intent, as the Hortons seek to defeat, *as a practical matter*, the requirements of the criminal restitution order and the bankruptcy court's nondischargeable judgment through a plan that expressly excuses them from making any payments against those obligations for 5 years. The Chapter 13 Plan as proposed, in short, amounts to an effort to manipulate the bankruptcy code to avoid the Hortons' obligations while they instead continue to build equity in their home (that would be exempt from garnishment due to the homestead exemption) and in other property like their vehicles. Such an outcome does not constitute good faith on the part of the debtors, and the plan should not be confirmed.

### 3. Other Relevant Factors Also Support the Conclusion that the Plan was Not Proposed in Good Faith

The Ninth Circuit Bankruptcy Appellate Panel in In re Lepe, 470 B.R. at 857, reviews eleven other factors from the case of Fid. & Cas. Co. of N.Y. v. Warrne (In re Warren), 89 B.R. 87, 93 (9th Cir. BAP 1987), which overlap to some extent with those discussed in Leavitt. Despite that overlap, some of them deserve mention here. For instance:

- The debtors are both currently employed with good paying jobs. It appears likely that their future earning capabilities will increase, yet none of that increase goes to the disfavored unsecured creditors. In re Lepe, 470 BR at 857, #2.

OBJECTION TO CHAPTER 13 PLAN - 7
Cause No: 15-11157-KAO

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 7 of 9

- The Center is concerned about the accuracy of the disclosure of the debtors' expenses, which then folds into the money available to fund the plan. For instance, the Schedule J statement of estimated expenses, at Dkt 14, pp. 20-21, does not disclose the monthly expenses for home ownership expenses, car payments, real estate taxes, etc., even though they clearly exist, as they are accounted for in the proposed plan. Without a complete disclosure of all of those expenses, with some sort of support for the conveniently round estimates of expenses, it is difficult to know one way or the other if there truly is no money available for unsecured creditors except for that specified by the debtors for the favored three unsecured creditors. In re Lepe, 470 BR at 857, #4.

- As mentioned earlier in this brief, the debtors propose to provide preferential treatment to the unsecured claims of some creditors (Wells Fargo, Chase, the homeowners association) to the exclusion of all others. In re Lepe, 470 BR at 857, #5.

- While technically not seeking to discharge the debt owed to the Center, the Hortons hope to completely avoid that obligation for at least the next 5 years. In re Lepe, 470 BR at 857, #7.

- The Hortons did previously file a chapter 7 action in 2007. In re Lepe, 470 BR at 857, #9.

- The Center doubts the sincerity and motivation of these debtors, as the Chapter 13 plan appears conveniently designed to avoid any hardship on the Hortons while they continue to (a) build equity in assets while (b) simultaneously avoiding the repayment of an obligation incurred through criminal conduct. In re Lepe, 470 BR at 857, #10.

OBJECTION TO CHAPTER 13 PLAN - 8
Cause No: 15-11157-KAO

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 8 of 9

### E. CONCLUSION

Given the totality of the circumstances in this matter, and the clear inequity of permitting the Hortons to avoid paying any of the obligations owed to the Center as a result of the underlying criminal conduct, the Center asks the Court to deny confirmation of the pending plan. Instead, the Hortons should be required to revise and submit a new plan that meets these objections and fairly compensates the Center for its losses, or the matter should be converted to Chapter 7 and the estate liquidated.

DATED this 29th day of April, 2015.

KINSEL LAW OFFICES

By: /s/ William A. Kinsel
William A. Kinsel, WSBA #18077
Attorney for The Center for Women's Health at Evergreen

OBJECTION TO CHAPTER 13 PLAN - 9
Cause No: 15-11157-KAO

**LAW OFFICES OF**
**WILLIAM A. KINSEL, PLLC**
MARKET PLACE TOWER
2025 First Avenue, Suite 730
SEATTLE, WASHINGTON 98121
(206) 706-8148

Case 15-11157-MLB    Doc 26    Filed 04/29/15    Ent. 04/29/15 17:02:49    Pg. 9 of 9